IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 4:20-CR-314- |
| | § | ALM-CAN-1 |
| ERIC RYAN ROBERTS (1) | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Eric Ryan Robert's Motion to Suppress Evidence [Dkt. 235]. On March 8, 2022, an evidentiary hearing ("Hearing") was held on the pending Motion to Suppress. After considering the Motion to Suppress, Response, admitted evidence, and oral argument of counsel at Hearing, and all other relevant filings and evidence, the Court recommended at Hearing that Defendant's Motion to Suppress [Dkt. 235] be **DENIED**. This Report memorializes such recommendation.

### BACKGROUND

On December 3, 2021, Defendant filed the instant Motion to Suppress, seeking suppression of the use of or mention of items seized from Defendant's home and from his office address [Dkt. 235]. The underlying search warrants were signed on August 5, 2020, by a state court magistrate judge, and authorized the search of Defendant's residence, located at 6651 Aintree Circle, Dallas, Texas ("Aintree Residence Warrant"), and of Defendant's office, Elite Group, located at 2474 Manana Drive, Suite #123, Dallas, Texas ("Manana Office Warrant") [Dkts. 235-1; 235-2; 272-1; 272-2]. Defendant urges the good-faith exception to the exclusionary rule does not apply to evidence seized pursuant to these two search warrants [Dkt. 235 at 4-5]. At Hearing,

counsel expressly confirmed the sole basis asserted for suppression is *Franks* [Dkt. 275 at 7-8].[1] The Government rejoins that the affidavits are supported by probable cause and that Defendant has not carried his burden to show that any of the complained of information is a false statement made intentionally or with reckless disregard to the truth [Dkt. 243].

On January 3, 2021, the Motion to Suppress was referred to the undersigned for consideration and recommended disposition [Dkt. 251]. The Motion was set for Hearing on January 24, 2022 [Dkt. 252] but was continued twice before proceeding on March 8, 2022 [Dkts. 260; 267].

On March 8, 2022, at Hearing before the undersigned, Mesquite Police Department officer and investigator Dustin Chautin ("Officer Chautin") testified [Dkts. 272; 275]. No other witnesses were called. In addition, the following exhibits were admitted, without objection:

> Defendant Exhibit 1: Affidavit for Search Warrant, Search Warrant, and Return of Property and Inventory for 6651 Aintree Circle, Dallas, Texas (Aintree Residence Warrant) [Dkt. 272-1]; and
>
> Defendant Exhibit 2: Affidavit for Search Warrant, Search Warrant, and Return of Property and Inventory for Elite Group, 2474 Manana Drive, Suite #123, Dallas, Texas (Manana Office Warrant) [Dkt. 272-2].[2]
>
> Government Exhibit 1: Eric Roberts' Search Warrant Timeline [Dkt. 272-3].

The Hearing transcript was filed March 17, 2022 [Dkt. 275].[3] The underlying facts relevant to Defendant's Motion to Suppress are summarized as set forth below.

---

[1] Defendant's Motion does not reference or cite *Franks*; instead, counsel broadly references the affiant's errors and misstatements [*See* Dkt. 235 at 4]. As such, at Hearing, the Court inquired regarding the bases upon which suppression was sought. In response to such inquiry, Defendant confirmed his intent to argue *Franks* [Dkt. 275 at 7-8].
[2] Defendant's Motion contains two exhibits: Exhibit A – Search Warrant for 6651 Aintree Circle, Dallas, Texas, issued August 5, 2020 [Dkt. 235-1]; and Exhibit B – Affidavit for Search Warrant, Search Warrant issued August 5, 2020, and Return and Inventory for Elite Group, 2427 Manana Drive, Suite #123, Dallas, Texas [Dkt. 235-2]. The affidavit for the search warrant for 6651 Aintree Circle is not attached to the Motion; however, Defendant introduced the affidavits for both search warrants at Hearing.
[3] On April 15, 2021, Defendant Eric Ryan Robert ("Defendant") was charged by First Superseding Indictment in four counts with violations of: 21 U.S.C. § 846, Conspiracy to Possess with the Intent to Distribute Marijuana ("Count 1");

The Aintree Residence Warrant and Manana Office Warrant are supported by affidavits sworn by Officer Chautin [Dkts. 272-1 at 1-10; 272-2 at 1-10].  The affidavits for each warrant contain nearly verbatim factual statements [Dkts. 272-1 at 2-7; 272-2 at 2-7].  The affidavits generally describe Officer Chautin's credentials and outline the background of the investigation into Defendant's alleged criminal activity, stating in relevant part: "[t]he information contained in this affidavit is information that was either personally learned by your affiant or relayed to him by other Mesquite police officers involved in the investigation of this incident" [Dkts. 272-1 at 2; 272-2 at 2].  As attested to in the affidavits:

> Based on the above facts, your Affiant believes that Eric Roberts White/Male 11/15/1971 and/or person(s) unknown to the affiant, are involved in the Manufacture/Delivery of a Controlled Substance(s) PG2 (THC) and Marijuana and the evidence listed in Item 2 will also be found in the location listed and may constitute evidence of the criminal offense of Manufacture/Delivery of a Controlled Substance PG2 (THC) and Marijuana, both of which are violations of the Texas Health and Safety Code.

[Dkts. 272-1 at 7; 272-2 at 7].  Officer Chautin continues by outlining his investigation of Defendant.  Officer Chautin states that on or about May 2020, the Mesquite Police Department's Criminal Investigations Division, Narcotics Unit, was investigating illegal marijuana and THC product sales in the Dallas County region.  At this time, investigators observed a large-scale drug transaction involving co-defendant Christopher Terry ("Terry") and the occupants at 5722 Winton Street.  Relevant to the pending Motion, in the affidavits, the Winton address is mistakenly referred to as "5222 Winton" twice initially, and then subsequently correctly identified as 5722 Winton [Dkt. 235-2 at 5-6].  At Hearing, the affiant testified the reference to the 5222 Winton address was a typographical error and that 5722 Winton, referenced elsewhere in the affidavits, is the correct

---

21 U.S.C. § 848(a), Continuing Criminal Enterprise ("Count 2"); 18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering in violation of 18 U.S.C. §§ 1956(a)(l)(A)(i), 1956(a)(l)(B)(i), 1956(a)(2)(A) and 1956(a)(2)(B)(i) ("Count 3"); and 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Drug Trafficking Crime ("Count 6") [Dkt. 151, Sealed].

address [Dkt. 275 at 25-26]. After observation of the large-scale drug transaction at the Winton address, investigators ultimately arrested Terry on charges related to the Manufacture/Delivery of large quantities of THC products and marijuana [Dkts. 272-1 at 3; 272-2 at 2]. Thereafter, Investigator P. Offutt of the Mesquite Police Department observed text messages on Terry's cell phone between Terry and a phone number, #214-457-0512, saved in the phone under the contact name "K" [Dkts. 272-1 at 3; 272-2 at 3]. Further investigation revealed Defendant was associated with this cell phone number, 214-457-0512 [Dkts. 272-1 at 3; 272-2 at 3; 275 at 47-48]. Review of the text messages between Defendant and Terry reflect communications about large-scale drug transactions of marijuana and other THC products [Dkts. 272-1 at 3; 272-2 at 3; 275 at 47]. Defendant directed Terry to come to 5722 Winton Street to conduct certain of these drug transactions [Dkts. 272-1 at 3; 272-2 at 3].

Based on this information, officers opened an investigation into Defendant and his known associates. Using law enforcement databases, investigators discovered Defendant resided at 6651 Aintree Circle, Dallas, with secondary addresses of 5722 Winton Street, Dallas, and 5731 Vanderbilt Avenue, Dallas [Dkts. 272-1 at 4; 272-2 at 3]. Investigators also learned Defendant operates a business "Elite Group," with an address of 2474 Manana Drive, Suite #123, Dallas [Dkts. 272-1 at 4; 272-2 at 3]. Eight vehicles were identified as registered to Defendant and/or Elite Group [Dkts. 272-1 at 4; 272-2 at 3].

Investigators identified Ronald McGuire ("McGuire") as an associate of Defendant [Dkts. 272-1 at 4; 272-2 at 3]. Law enforcement databases revealed Defendant and McGuire as sharing at least one business, McGuire & Roberts, Inc., in addition to a mutual address at 5722 Winton Street, Dallas [Dkts. 272-1 at 4; 272-2 at 3]. On July 22, 2020, McGuire was arrested in New Mexico transporting approximately 112 kilograms of marijuana and a large sum of United

States currency [Dkts. 272-1 at 4; 272-2 at 3]. McGuire was operating a 2019 Ford Transit Van, VIN #1FTYR2CGOKKB76275, one of the eight vehicles that investigators identified as registered to Defendant and/or Elite Group [Dkts. 272-1 at 4; 272-2 at 3].

On August 3, 2020, investigators established surveillance at both 6651 Aintree Circle, Dallas, and 5722 Winton Street, Dallas [Dkts. 272-1 at 4; 272-2 at 4]. Investigators observed Defendant retrieve mail from the mailbox at 5722 Winton Street and enter the residence [Dkts. 272-1 at 4; 272-2 at 4]. Surveillance of Defendant observed him to then travel to 6651 Aintree Circle where Defendant parked his vehicle in the driveway and entered the residence [Dkts. 272-1 at 4; 272-2 at 4]. Investigators surveilled Defendant leaving the Aintree residence and travelling to the office at 2474 Manana Drive, Suite #123, Dallas [Dkts. 272-1 at 4-5; 272-2 at 4]. There, Defendant was observed exiting the rear garage of the office with a person who appeared to be his minor daughter [Dkts. 272-1 at 5; 272-2 at 4]. Thereafter, Defendant was seen returning to 6651 Aintree Circle, where he parked his vehicle inside the garage and entered the residence [Dkts. 272-1 at 5; 272-2 at 4].

On August 4, 2020, surveillance was again established at the 6651 Aintree Circle residence and the office at 2474 Manana Drive. That morning, investigators observed Defendant depart from the 6651 Aintree Circle residence and arrive at the 2474 Manana Drive office [Dkts. 272-1 at 5; 272-2 at 4]. Defendant carried a large duffle bag and two boxes from the office to a 2019 Ford transit van outside, identified as the same vehicle driven by McGuire on July 22, 2020 when he was arrested in New Mexico [Dkts. 272-1 at 5; 272-2 at 4]. Defendant left 2474 Manana in the van and traveled to a self-storage unit, where an investigator observed Defendant remove the duffle bag from the van and take it inside the storage unit [Dkts. 272-1 at 5; 272-2 at 4]. Defendant then left the storage unit and made stops at the office at 2474 Manana and the 5722 Winton residence

before returning to the storage unit [Dkts. 272-1 at 2, 5; 272-2 at 4-5]. Investigators next observed Defendant leaving the storage unit and returning to 2474 Manana Drive [Dkts. 272-1 at 2; 272-2 at 5].

Particularly relevant to Defendant's *Franks* inquiry, the affidavit states the following about the events of August 5, 2020, the day the Aintree Residence Warrant and Manana Office Warrant were executed:

> On August 5,2020, Investigators established surveillance at 6651 Aintree Circle and 2474 Manana Drive, Suite #123. At about 10:05 A.M., Roberts was observed leaving the Aintree Circle residence operating the Ford Mustang mentioned above. Investigators conducted surveillance on Roberts. Roberts travelled to the Randall Reed s Prestige Ford, 3601 S. Shiloh Road, Dallas. Roberts Ford Raptor, Texas license late #LRL7740 was parked in the service bay for the location. This vehicle is listed above as vehicle (7). Roberts then travelled to 2474 Manana Drive, Suite #123. At about 11:08 A.M., a white 2019 Ford Transit van, Texas license plate #LWX5025, backed into the rear garage door to the location. This vehicle is listed above as vehicle (8). At about 11:32 A.M., a blue 2007 Infiniti G35, Texas license plate NFK2465, arrived in the back garage of the location. The vehicle is registered to Larry Jason Clark, white male 11/06/1973 at 4931 Clover Haven Street, Dallas. A short time after arriving, the Infiniti was driven around to the front of the location and parked. A male described as white, with long hair, wearing green shirt and pants. This appears to be the registered owner of the vehicle. The ale enters the location and immediately leaves out of the rear garage for the location operating the white 2019 Ford Transit van, Texas license plate LWX5025. Investigators conducted surveillance on the vehicle as it left the location. The van travelled to 4931 Clover Haven Street, Dallas. This is also the registered location of the Infiniti mentioned in this paragraph. The van backed in the rear driveway of the location. Investigators observed the male believed to be Larry Clark and an unknown white male with long hair removing black with yellow lid totes from the rear of the van. The males appeared to be in a rush to place the items in the residence. Investigators through training and past investigative experience, have seen these totes to be used to transport and/or store illegal narcotics.
>
> Investigators continued surveillance on 4931 Clover Haven Street, Dallas. On August 5, 2020, at about 03:48 P.M., Investigators observed a silver Chrysler 300, Texas license plate HCZ9508, arrive in front of Clover Haven residence. A black male exited the driver seat carrying a bag and went inside the residence. At about 03:50 P.M., the same male exited the residence carrying a bag and placed the bag in the trunk of the vehicle. Investigators requested the Dallas Police Department to respond to area to conduct a traffic stop on the vehicle for multiple violations of Texas Transportation Code. Dallas PD Office s) stopped the vehicle in the 1600

block of Martin Luther King JR Boulevard. Officer(s) established Probable Cause to enter the vehicle. Inside the trunk of the vehicle, Officer(s) located the above described bag. Inside the bag, Officer(s) located multiple pounds of Marijuana, sheets of THC, and THC edibles. The driver and sole occupant of the vehicle was arrested and transported to the Mesquite Police Department Jail. The illegal narcotics were field tested for a resumptive positive for THC/Marijuana. The Dallas Police Department incident number is 20-1409407and the Mesquite Police Department case number is 20064669.

On August 5, 2020, Investigators applied for an Evidentiary Search Warrant for 4931 Clover Haven Street, Dallas, Dallas County, Texas. The Search Warrant was granted by Judge J. Mckee. During the anticipation of the Search Warrant, Larry Clark was observed exiting the back of the residence operating his 2007 Infiniti G35, Texas license plate #NFK2465. Investigators along with marked Dallas Police Officer(s) conducted an investigative stop in anticipation of the Search Warrant on Clark s and the vehicle he was operating near the 5400 block of Jim Miller Road, Dallas. During that traffic stop, Clark was observed as the driver of the vehicle and the front seat passenger was American Clark, white female 12/09/1999. During the detention, L. Clark admitted to having a small bag of Marijuana in right front pants pocket. Investigators also observed a black tote with a yellow lid in the back seat of the vehicle. Inside the tote was large quantity of Marijuana. This tote as a match to the totes seen being transported from 2474 Manana Drive, Suite #123, to 4931 Clover Haven Street, Dallas, described in above paragraphs. Upon execution of the Search Warrant at 4931 Clover Haven Street, Dallas, Investigators discovered four additional black with yellow lid totes and one black with red lid tote inside the residence. Inside those totes was a large quantity of Marijuana. This was documented on Mesquite Police Department case number 20064683.

Investigator Chautin met with Larry Clark in the jail for an interview which was recorded. During the interview he was advised of his Miranda Warning to which he waived his rights. Clark admitted that he sells one to two pounds of marijuana per week to supplement his income. He advised that Eric Roberts supplies him with his marijuana and he's been purchasing large quantities of marijuana from Roberts for about two years. He advised that he's been to Robert's residence on Aintree to purchase marijuana, he's been to his house on Winton to purchase marijuana, and here recently (in the last couple of months) Roberts has been having him come to the warehouse on Manana to purchase marijuana from him. Clark advised that he's probably been to the warehouse approximately six to eight times over the course of the last two months to purchase marijuana from Roberts. Clark admitted that today, he picked up approximately six plastic totes which were filled with marijuana from the warehouse on Manana. He advised that it was too large of an amount to fit into his car so Eric had one of his white vans loaded with the product for him. He advised that Eric loaned him the van and he transported the marijuana to his residence on Clover. Haven where he unloaded the van.

[Dkts. 272-1 at 2, 6-7; 272-2 at 5-7]. Based on the foregoing, the Aintree Residence Warrant was issued for Defendant's residence, and the Manana Office Warrant for Defendant's office [Dkts. 272-1 at 9-10; 272-2 at 10]. Officer Chautin testified at Hearing that he was present for the execution of the Aintree Residence Warrant but was not present for execution of the Manana Office Warrant [Dkt. 275 at 22].

## ANALYSIS

To reiterate, Defendant moves to suppress all evidence seized pursuant to both the Aintree Residence Warrant and the Manana Office Warrant. Defendant urges that the good-faith exception to the exclusionary rule does not apply because the warrant affidavits contain false statements made intentionally or with reckless disregard for the truth.

*The Fourth Amendment Framework and the Suppression Remedy*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The exclusionary rule, which permits criminal defendants to seek exclusion (suppression) of evidence obtained through "illegal search and seizure," provides one vehicle through which citizens may "effectuate [this] Fourth Amendment right." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (noting that this rule "applies as well to the fruits of the illegally seized evidence"). For decades, the Supreme Court has characterized exclusion through suppression as an "extreme sanction" that courts should apply only sparingly. *United States v. Leon*, 468 U.S. 897, 926 (1984); *see also Herring v. United States*, 555 U.S. 135, 141 (2009) (warning that application of the exclusionary rule exacts "substantial social costs"); *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence, however, has always been our last resort, not our first impulse."). "A defendant normally bears the burden of proving by a preponderance of the evidence that the

challenged search or seizure was unconstitutional." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005); *see also United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014).

Where a search warrant is involved, a court must engage in a two-part inquiry in deciding whether to suppress evidence: (1) it generally must ask first whether the good-faith exception to the exclusionary rule applies (and, in turn, whether any of the exceptions to that rule applies) and then, (2) whether probable cause supports the warrant in question. *Leon*, 468 U.S. at 924-25; *see also United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010); *United States v. Tovar*, 719 F.3d 376, 385 n.8 (5th Cir. 2013). "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *Leon*, 468 U.S. at 921-25). "[W]here probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded." *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002) (citing *Leon*, 468 U.S. at 919-20); *see United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) (quoting *Leon*, 468 U.S. at 922) (If "reliance on a defective warrant is 'objectively reasonable,'" then the Fourth Amendment "does not require suppression of evidence obtained pursuant to that warrant."). In considering whether the good-faith exception applies, the Court does not attempt to determine the officer's subjective belief regarding the validity of the warrant. *See Leon*, 468 U.S. at 922 n.23. Further, courts consider whether probable cause supports the warrant at the second step of the inquiry only in the absence of good faith at the first step. *See United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009); *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of

judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter.").

Normally, the issuance of a warrant by a magistrate is sufficient to establish an officer's good faith. *United States v. Pena-Rodriquez*, 110 F.3d 1120, 1130 (5th Cir. 1997). But the good-faith exception to the exclusionary rule does not apply under the following circumstances, as set out in *Leon*:

> (1) if the issuing judge was misled by information in an affidavit that the affiant knew or should have known was false;
> (2) if the issuing judge abandoned his impartial judicial role;
> (3) if the affidavit supporting the warrant so lacks indicia of probable cause that reliance on it is entirely unreasonable; or
> (4) if the warrant on its face is so deficient in identifying the place to be searched or the things to be seized that it cannot reasonably be presumed valid.

*United States v. Brock*, 797 F. App'x 179, 179 (5th Cir. 2020) (citing *Leon*, 468 U.S. at 923). Here, Defendant bears the "burden of showing that the good faith exception to the exclusionary rule does not apply[.]" *United States v. Perez*, No. 6:17-35, 2018 WL 781953, at *1 (S.D. Tex. Feb. 7, 2018) (citing *United States v. Jarman*, 847 F.3d 259, 264 (5th Cir. 2017)); *see also United States v. Guerra*, No. 2:17-CR-00137-O, 2018 WL 8805227, at *4 (N.D. Tex. Oct. 3, 2018) (citing *United States v. Rosa*, 721 F. App'x 403 (5th Cir. 2018)) ("When challenging the application of the good faith exception, Defendant carries the burden to prove by a preponderance of the evidence that it does not apply.").

### *The Good-Faith Exception –* **Franks** *Inquiry*

Defendant argues only the first of the exclusions to the good-faith exception – whether "the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth." *See Cavazos*, 288 F.3d at 709-10 (citing *Franks v. Delaware*, 438 U.S. 154, 155-56, (1978)). The Supreme Court explained this inquiry in *Franks*, holding that evidence should be

suppressed if the defendant "shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (citing *Franks*, 438 U.S. at 155-56); *see Cavazos*, 288 F.3d 710. Under *Franks*, a defendant must show three questions are satisfied to prevail on a motion to suppress: "First, does the affidavit contain a false statement?"; "[s]econd, was the false statement made intentionally or with reckless disregard for the truth?"; and "third, if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause?" *Ortega*, 854 F.3d at 826 (first citing *United States v. Singer*, 970 F.2d 1414, 1416-17 (5th Cir. 1992); then citing *United States v. Looney*, 532 F.3d 392, 394-95 (5th Cir. 2008) (per curiam); finally citing *United States v. Froman*, 355 F.3d 882, 889-91 (5th Cir. 2004)). In *Alvarez*, the Fifth Circuit provided "circumstantial factors that it found relevant" to the *Franks* inquiry: "exigency, the materiality of the misrepresentation, the officer's level of training, non-disclosure of facts underlying conclusory statements, and whether the officer consulted with an attorney." *United States v. Neal*, 182 F. App'x 366, 370 (5th Cir. 2006) (citing *United States v. Alvarez*, 127 F.3d 372, 375 (5th Cir. 1997)). Further, "[i]n considering whether the drafting of an affidavit involved reckless disregard of the truth, the Fifth Circuit has consistently considered both the materiality of the false statement as well as the context in which the affidavit was drafted." *United States v. Beard*, No. 4:18-CR-00601, 2019 WL 2161038, at *9 (S.D. Tex. May 17, 2019) (citing *Alvarez*, 127 F.3d at 374), *aff'd*, 16 F.4th 1115 (5th Cir. 2021).

***Application to the Warrants at Issue***

Again, Defendant urges the good-faith exception does not apply to the search warrants for his residence and office based on *Franks*. More specifically, Defendant challenges the following

in or related to the warrant affidavits: (1) that the address of Defendant's residence at 5722 Winton Street, Dallas, is erroneously stated as 5222 Winton Street twice; (2) that descriptions of Terry's (not Defendant's) conduct lack sufficient detail; (3) that investigators did not directly witness Defendant with drugs at either location making a sale to Terry or Clark; (4) that Defendant possessed duffle bags, totes, and vans for his legitimate business and not for illegal marijuana distribution; and (5) that traffic stops of Defendant's associates lacked reasonable suspicion [Dkts. 235 at 2-5; 275 at 25-30, 32-42].  The Government in response urges that Defendant has not shown that any of the information in the affidavit questioned here is false, except for the typographical error as to the Winton address, which is not a residence covered by either search warrant at issue [Dkts. 243 at 11-14; 275 at 43-59].  The Government further argues that, even if there was false or incorrect information in the affidavit, Defendant failed to show Officer Chautin knowingly or recklessly included such information [Dkts. 243 at 11; 275 at 54-55, 61-62].

Defendant has not met his burden to show by a preponderance of the evidence that Officer Chautin made any false statement intentionally or with reckless disregard for the truth.  Indeed, Defendant does not argue that any information in the affidavit is false except for the typographical error stating that Terry was surveilled at "5222 Winton Street" rather than 5722 Winton Street, the correct address [Dkts. 272; 271-2 at 2; 272-2 at 2; 275 at 60-61].  At Hearing, Office Chautin admitted this was a typographical error and testified it was not made intentionally [Dkt. 275 at 26, 55].  He also pointed out that the error appears only two times in the first paragraph of the affidavits about the investigation, but the address is correctly stated throughout the remainder of the affidavits [Dkt. 275 at 26].  Defendant has not shown that a mere typographical error is sufficient to satisfy *Franks*, and the sentences with unintentional errors do not have to be excised from the warrant affidavits.  *See Beard*, 2019 WL 2161038, at *10 (collecting cases) ("The Court has

thoroughly searched for examples of how similarly situated federal courts view typographical errors vis-a-vis the *mens rea* requirement of *Franks*. The conclusion one reaches is that if there is a rule it is that negligent or unintentional typographical errors are not grounds for excising the sentences involved"). The Court finds that the requisite intent for *Franks* is not satisfied here; Officer Chautin's testimony acknowledges the unintentional error and further notes the correct address, 5722 Winton Street, is used throughout the rest of the affidavit. *See id.* at *11 ("The presence of a cut-and-paste error—particularly one where the language of the paragraph still suggests the accurate identity of the canine officer and where the affiant presented credible testimony to explain the error—cannot invalidate an otherwise lawful warrant."); *Looney*, 532 F.3d at 394 ("even if the defendant proves that one or more statements in the affidavit are false, and yet fails to prove that the affiant deliberately or recklessly included such false information in the affidavit, the court may consider the entire affidavit—without any excision—under the good-faith exception to the exclusionary rule.").

Defendant's remaining challenges to the affidavit simply do not satisfy the first question of the *Franks* inquiry. As the Government correctly argued at Hearing, information is not materially false for the purpose of *Franks* where Defendant challenges an affidavit's general lack of detail, its "impermissibly broad" phrasing, or the omission of facts from the affidavit.[4] *See*

---

[4] Another court recently considered a motion to suppress urging similar "omissions" as the basis for a *Franks* challenge, finding that the omissions were insufficient to overwhelm the other bases for finding probable cause in the warrant affidavit:
> Here, Edwards contends that the affidavit contained several material omissions. In sum, he argues that law enforcement omitted: (1) general information about IP addresses; (2) that Edwards was not the only IP address associated with the prohibited image; (3) whether Edwards's IP address was open or secured; (4) whether others lived with Edwards; and (5) that there were other additional actions that law enforcement did not take. But even if this information had been included in the warrant affidavit, there would still remain a likelihood or fair probability that the [evidence] was accessed from the defendant's place of residence and that evidence [ ] would be found there. Accordingly, the Court denies Edwards's alternative request for a Franks hearing.

*United States v. Edwards*, No. 1:20-CR-068-H, 2021 WL 7278984, at *8 (N.D. Tex. Aug. 24, 2021).

*United States v. Hare*, 772 F.2d 139, 141 (5th Cir. 1985) ("A statement in a warrant affidavit is not false merely because it summarizes or characterizes the facts in a particular way."); *see also United States v. Mueller*, 902 F.2d 336, 342 (5th Cir. 1990) ("the affiant's failure to describe every element of his reasoning process, without more, should not be deemed a material omission."); *Singer*, 970 F.2d at 1417 (citing *Hare*, 772 F.2d at 141) ("we find that the 'challenged statement, though ambiguous, reasonably could and should be read truthfully'"). Each of Defendant's remaining contentions are directed at a perceived lack of detail or omission of additional investigatory facts from the affidavits and the probable cause inquiry.

To that end, Defendant questioned Officer Chautin at Hearing as to whether he considered if Defendant had legitimate business reasons to use duffle bags and transit vans or to pick up mail at multiple residences, to which Officer Chautin testified that he had not [Dkt. 275 at 33-35]. However, this does not suffice to show a material omission particularly where, as here, other facts supporting probable cause are alleged to exist and are readily apparent upon review of the affidavits [Dkts. 272-1 at 6-7; 272-2 at 7; 275 at 39-42, 52-53]. *See United States v. Edwards*, No. 1:20-CR-068-H, 2021 WL 7278984, at *9 (N.D. Tex. Aug. 24, 2021) ("The Court finds that law enforcement's omission of alternative inquires that were not pursued is not material here because there was a sufficient basis for probable cause with or without its inclusion."); *United States v. Pickens*, No. 3:12-CR-356-D O1, 2013 WL 1155414, at *6 (N.D. Tex. Mar. 21, 2013) ("Pickens instead essentially relies on the contentions that Officer Hanley's conclusion was reckless because he did not conduct further investigation and that the affidavit lacks sufficient factual support. This argument seems to challenge whether probable cause existed, which this court need not reach unless Pickens can avoid the good-faith exception."), *aff'd*, 575 F. App'x 288 (5th Cir. 2014).

The argument that the traffic stops of Defendants' associates were conducted without probable cause similarly does not show the requisite intent; to the contrary, Officer Chautin testified at Hearing of his continued belief that each traffic stop was lawful, and the officers had probable cause for such stops [Dkt. 275 at 35-36]. *See Edwards*, 2021 WL 7278984, at *9. The alleged lack of detail about the drug transaction that led to Terry's arrest similarly does not suffice to show the statements are false or omitted any detail is material. *See Beard*, 2019 WL 2161038, at *10. Further, Officer Chautin testified that the facts related to Defendant came from information obtained from Terry's cell phone and the phone number positively identified as associated with Defendant, not an interview with Terry, whose reliability and credibility are thus not relevant to or referenced in the affidavit [Dkt. 275 at 56]. Defendant's argument that Officer Chautin failed to testify Defendant was personally seen conducting a marijuana sale at either residence, 5722 Winton or 6651 Aintree, is also insufficient to satisfy *Franks* [Dkt. 275 at 40-42]. *See United States v. Gonzalez*, No. 5:18-CR-482, 2018 WL 6174202, at *8 (S.D. Tex. Nov. 7, 2018) ("The search warrant does not need to be particularized to an individual, but to a location. Thus, law enforcement did not need to corroborate Ms. Gonzalez's residence at the address to establish probable cause. Any omission of a background check was neither deliberate nor intended to mislead the Magistrate Judge. Accordingly, this 'omission' fails to meet all three prongs of the *Franks-Ortega* analysis."), *report and recommendation adopted*, No. 5:18-CR-482, 2018 WL 6173724 (S.D. Tex. Nov. 26, 2018). Because Defendant's remaining contentions do not argue that the affidavit's information is false or should have been known to be false,[5] he has not carried his

---

[5] Defendant's Motion identifies two other examples alleged to be "speculation and mistake":
    1. On August 3, 2020, two days before the executions of search warrants, Affiant swears in his Affidavit that Mr. Roberts and his young daughter went from their home to another home he owned to check the mail, then back to their home, then to his business, then back to his home.

burden under *Franks* to show the good-faith exception does not apply. *See id.* at *9 ("Defendant does not dispute the truth of the statements in Paragraph 19, just that these tendencies did not apply to him at the time of the application given the facts then-known. Such a contention does not undermine the veracity of the warrant and falls outside of the auspices of the *Franks* inquiry as there is no false or misleading statement.").

In sum, Defendant has not satisfied his burden under *Franks* to show that Officer Chautin intentionally or recklessly provided materially false information in the affidavit for the Aintree Residence Warrant or the Manana Office Warrant by a preponderance of the evidence. The Court therefore finds the good-faith exception applies and suppression is inappropriate.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant Eric Ryan Roberts's Motion to Suppress [Dkt. 235] be **DENIED**.

The Parties have agreed to shorten the objection period to seven (7) days [Dkt. 275 at 6]. Thus, within seven (7) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place

---

2. On August 4, 2020, the day before the raid and arrests, Mr. Roberts left his home and went to his business, then later left his business with a duffle bag and two boxes. He was followed by law enforcement to a self-storage building with a unit leased to another man. Roberts took the duffle bag into the self-storage building and left. He returned to his business. Affiant wrote in the Affidavit that the behavior he observed is consistent with illegal drug behavior. After lunch, Mr. Roberts was seen with his young daughter.

[Dkt. 235 at 4-5]. Having considered Defendant's evidence, the Government's provided timeline, and Officer Chautin's Hearing testimony, Defendant has not shown that these representations are materially false, or if they are, that they were made knowingly or recklessly. *See Edwards*, 2021 WL 7278984, at *8 ("The warrant affidavit did not include explicit information regarding whether Edwards lived alone or with others. Edwards makes no attempt to explain the importance or materiality of this point. But it is clear that law enforcement took steps to verify the occupancy of the home").

in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 24th day of March, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE