# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES § | |
| § | |
| v. § | Case No. 4:20-cr-00314 |
| § | Judge Mazzant |
| ERIC RYAN ROBERTS (1) § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Eric Ryan Roberts' Motion for New Trial (Dkt. #494).  Having considered the motion, the Court finds that it should be **DENIED**.

### BACKGROUND

For multiple years, Defendant Eric Roberts ("Roberts") orchestrated a large-scale drug-trafficking operation that spanned the United States.  Roberts utilized a system where he would organize drivers to transport marijuana to certain destinations across the country, and then that marijuana would be sold to various dealers to distribute.  Ultimately, Roberts and several other defendants were indicted for violating 21 U.S.C. § 846 and 18 U.S.C. § 1956(h) for their involvement in a conspiracy to possess, with the intent to distribute, marijuana and a conspiracy to commit money laundering.  In addition, Roberts was accused of carrying firearms in furtherance of a drug-trafficking crime and engaging in a continuing criminal enterprise in violation of 18 U.S.C. § 924(c) and 21 U.S.C. § 848(a), respectively.

Roberts and four other defendants proceeded to a jury trial on January 6, 2023.  After a trial that spanned two weeks, the jury was instructed and retired to deliberate.  On January 19, 2023, the jury returned its verdict and convicted Roberts on all charges (Dkt. #476).  On February 2, 2023, Roberts filed his motion for new trial, asserting the Court incorrectly instructed the jury (Dkt. #494).  The Government responded on March 9, 2023 (Dkt. #502).

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 33 provides that, on request, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). The decision to grant or deny a motion for new trial pursuant to Rule 33 is well within the Court's discretion. *E.g.*, *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004) (citing *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997)). "Generally, motions for new trial are disfavored and must be reviewed with great caution." *United States v. Smith*, 804 F.3d 724, 734 (5th Cir. 2015). The Court typically "should not grant a motion for new trial unless there would be a miscarriage of justice . . . ." *Wall*, 389 F.3d 466 (citation omitted). As such, a new trial is proper only where the defendant's "substantial rights" have been harmed—either based on a single error or the cumulative effect of multiple errors. *United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015).

**ANALYSIS**

In his motion for new trial, Roberts presents two main arguments—both relating to the Court's instructions to the jury. First, Roberts contends that the Court erred in instructing the jury on the conspiracy charges in this case, and his substantial rights were thereby harmed. Second, he argues that the Court incorrectly instructed the jury on the elements for unlawful use of a communication facility, which was a predicate offense used for Robert's continuing criminal enterprise ("CCE") conviction.

"District courts enjoy substantial latitude in formulating a jury charge." *United States v. Webster*, 162 F.3d 308, 321–22 (5th Cir. 1998). In reviewing jury instructions, the Fifth Circuit "consider[s] whether the [challenged] instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Ebron*, 683 F.3d 105, 151–52 (5th Cir. 2012) (citing *United*

*States v. Whitfield*, 590 F.3d 325, 347 (5th Cir. 2009)).  Even when there is error with the jury's instructions, the Court will not grant a new trial unless a miscarriage of justice occurred.  *United States v. Hoffman*, 901 F.3d 523, 552 (5th Cir. 2018).  With this framework, the Court considers Roberts's arguments.

### I. Conspiracy Instruction

Initially, Roberts claims that he is entitled to a new trial because the jury was incorrectly instructed with regards to *Pinkerton* liability.  *See Pinkerton v. United States*, 328 U.S. 640, 645–47, 66 S. Ct. 1180, 1183–84 (1946).  The Court notes that Roberts (1) did not raise this issue in the charge conference with the Government and (2) he did not object to this charge at trial.  Nevertheless, Roberts has come short of demonstrating that he deserves a new trial.

"Under *Pinkerton,* 'a conspirator can be found guilty of a substantive offense committed by a co-conspirator and in furtherance of the conspiracy, so long as the co-conspirator's acts are reasonably foreseeable.'"  *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016) (quoting *United States v. Mata*, 491 F.3d 237, 242 n.1 (5th Cir. 2007)).  In instructing the jury on Count One of the First Superseding Indictment, which was conspiracy to possess, with the intent to distribute, marijuana in violation of 21 U.S.C. § 846, the Court issued a *Pinkerton* instruction that stated:

> Further, a conspirator is responsible for acts committed by other conspirators if the conspirator was a member of the conspiracy when the act was committed and if the act was committed in furtherance of the conspiracy.  Therefore, if you have first found a Defendant guilty of the conspiracy charged in Count One of the First Superseding Indictment and if you find beyond a reasonable doubt that during the time the Defendant was a member of that conspiracy, another conspirator committed acts *in furtherance of or as a foreseeable consequence of that conspiracy*, then you may find the Defendant responsible for said acts, even though the Defendant may not have personally participated in the acts

(Dkt. #489 at pp. 16–17) (emphasis added).  With respect to Count Three of the First Superseding Indictment, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956, the Court

3

instructed the jury on the substantive elements of the offense, and that its conspiracy instructions for Count One also applied to Count Three (Dkt. #489 at p. 26). The conspiracy instructions for Count One included the *Pinkerton* instruction above (Dkt. #489).

Citing *United States v. Sanjar*, Roberts argues that the *Pinkerton* instruction was erroneous and affected his substantial rights because a co-conspirator's acts must be foreseeable *and* in furtherance of the conspiracy. *See* 876 F.3d 725, 743–44 (5th Cir. 2017). Because the jury was instructed in the disjunctive—namely, that the co-conspirator's acts could be in furtherance of "or" a foreseeable consequence of the conspiracy—Roberts urges a new trial on all of his convictions.

In *Sanjar*, the defendant argued that the district court erred in giving an instruction that "[a] conspirator is responsible for offenses committed by other conspirators if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, or as a foreseeable consequence, of the conspiracy." *Id.* at 743. The Fifth Circuit reviewed *Pinkerton* liability in the context of its jurisprudence, and it noted that Fifth Circuit case law has not always required foreseeability as a requirement—nor did the Fifth Circuit Pattern Jury Instructions. *Id.* (citations omitted). However, today, the Pattern Jury Instructions restore "foreseeability" and "in furtherance of" as requirements for *Pinkerton* liability, so the "better course is for district courts to follow the updated pattern and instruct the jury in the conjunctive . . . ." *Id.* Nevertheless, the *Sanjar* court found that the failure to require a foreseeability finding was not a reversible error. *Id.*

Likewise, the Court does not find that the disjunctive language here affected Robert's substantial rights, so a new trial is unwarranted. Starting with the two conspiracy charges, the *Pinkerton* instruction would not affect Roberts's culpability on those counts. The jury still needed

4

to conclude that Roberts reached an illegal agreement and the requisite elements for both charges. Tellingly, Roberts makes no mention of these charges in his current motion.

As for Roberts's conviction for possessing a firearm in furtherance of a drug-trafficking crime under 18 U.S.C. § 924(c), the Court is similarly unpersuaded. The jury was never instructed that *Pinkerton* liability applied to that charge (Dkt. #489). To find Roberts guilty, the jury was required to find that (1) he conspired to possess, with the intent to distribute, marijuana and (2) he knowingly possessed a firearm in furtherance of the conspiracy (Dkt. #489 at pp. 26–27). Moreover, as Roberts recognizes in his motion, there was evidence that he personally violated § 924(c). For instance, Roberts argues that "it is impossible to know" whether the jury found that he personally violated § 924(c) through his own firearms collection, or whether the jury found him responsible for his co-conspirators' actions (Dkt. #494 at p. 5). This admission undercuts Roberts's argument at the jump. Roberts, of course, does not contend that his own firearms collection could not be considered possession in furtherance of a drug-trafficking crime. *See* (Dkt. #494 at p. 5); *see also United States v. Goins*, 93 F. App'x 675, 676 (5th Cir. 2004) (finding legally owned firearms can still qualify as possessing a firearm in furtherance of a drug-trafficking crime). Therefore, assuming the instruction was erroneous, Roberts has not shown that "a miscarriage of justice" occurred here. *See Wall*, 389 F.3d 466. In sum, because (1) the *Pinkerton* instruction did not specifically apply to Roberts's gun charge, (2) the gun charge specifically asked the jury to consider *Roberts's* possession of a firearm in furtherance of a drug-trafficking crime, and (3) there was evidence that Roberts possessed firearms in furtherance of a drug-trafficking crime, the Court finds that a new trial is unwarranted for Roberts's conviction under 18 U.S.C. § 924(c).

Finally, the Court considers the CCE charge and whether the *Pinkerton* instruction affected Roberts's substantial rights. It did not. For the CCE charge, the *Pinkerton* instruction was not specifically mentioned (Dkt. #489). The Court laid out the requisite elements for the crime under 21 U.S.C. § 848, which are:

> (1) a predicate offense violating a specified drug law (2) as part of a "continuing series" of drug violations (3) that occurred while the defendant was acting in concert with five or more other people (4) in relation to whom the defendant occupied the position of an organizer or manager and from which series the defendant (5) obtained substantial income or resources.

*United States v. Hicks*, 945 F.2d 107, 108 n.1 (5th Cir. 1991); *see also* (Dkt. #489 at pp. 17–21). The predicate offense for Roberts's conviction was conspiracy to possess, with the intent to distribute, marijuana (Dkt. #489). Moreover, to satisfy the "continuing series" element, the Government had the burden of proving that Roberts committed three or more drug violations. *See Hicks*, 945 F.2d at 108. In Roberts's case, the three violations consisted of the conspiracy to possess, with the intent to distribute, marijuana as charged in Count One and uncharged violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute, and 21 U.S.C. § 843(b), unlawful use of a communication facility.[1] The jury was not instructed to consider the actions of Roberts's co-conspirator's, but rather "whether the defendant engaged in a continuing series of at least three violations of the Controlled Substances Act" (Dkt. #489 at p. 19). There is no indication that the *Pinkerton* instruction caused a miscarriage of justice with respect to these offenses.

As stated previously, any *Pinkerton* instruction would not affect the conspiracy conviction. Additionally, the Government provided numerous examples of Roberts engaging in conduct that

---

[1] The Government used two instances of uncharged conduct to meet the requisite number of violations for a CCE conviction. Though the Fifth Circuit has not spoken to the issue, other circuit courts have allowed uncharged conduct to be used for a CCE offense. *United States v. Alvarez-Moreno*, 874 F.2d 1402, 1409 (11th Cir. 1989); *United States v. Sterling*, 742 F.2d 521, 526 (9th Cir. 1984); *Sperling v. United States*, 692 F.2d 223, 226 (2d Cir. 1982), *superseded by statute on other grounds as recognized in United States v. Shyne*, 617 F.3d 103, 108 (2d Cir. 2010). Roberts does not contend that the Court erred in allowing the Government to use uncharged violations for the CCE conviction.

violated 21 U.S.C. §§ 841(a)(1) and 843(b).  Throughout the conspiracy, Roberts communicated with his drivers who transported marijuana on his behalf, and he discussed plans to deliver the drugs to various destinations.  Roberts owned various automobiles that the marijuana was transported in, and he coordinated delivery drivers to transport marijuana on his behalf.  Witnesses also indicated that they met with Roberts and personally purchased marijuana from him to sell later.  *E.g.*, (Dkt. #493) (testimony of Larry Clark).  Roberts does not argue that the record was insufficient to find violations of §§ 841(a)(1) or 843(b).  Nor can he with any candor.  Even though the *Pinkerton* instruction did not apply to the CCE count, the record still demonstrates that Roberts met the necessary number of predicate violations for his CCE conviction.  As such, Roberts was not harmed by any error.

For these reasons, the Court finds that Roberts is not entitled to a new trial due to the *Pinkerton* instruction.  Any error did not cause a miscarriage of justice or harm Roberts's substantial rights.

**II.     CCE Count & Unlawful Use of a Communication Facility**

Next, Roberts argues that the Court erred in instructing the jury on his CCE offense.  Again, a CCE offense has five elements, including that the defendant engaged in a "continuing series" of drug violations.  *Hicks*, 945 F.2d at 108.  Roberts takes issue with how the Court instructed the jury on whether Roberts participated in a continuing series of drug violations under 21 U.S.C. § 848.

Specifically, Roberts claims the Court misstated the elements required for unlawful use of a communication facility in violation of 21 U.S.C. § 843(b)—which the Government used to show that Roberts engaged in a "continuing series" of violations under § 848.  According to Roberts, the Court (1) improperly omitted a venue instruction for the § 843(b) offense and (2) did not specify

which specific communication was illegal under § 843(b).  The Court finds these arguments meritless.

### A.  Venue for the 21 U.S.C. § 843(b) Offense

For his venue argument, Roberts contends that the Government must establish venue for a § 843(b) offense either where a call was made or where it was received (Dkt. #494 at p. 6) (citing *Andrews v. United States*, 817 F.2d 1277, 1279 (7th Cir. 1987) and then citing *United States v. Barnes*, 681 F.2d 717, 723–24 (11th Cir.), *opinion amended on denial of reh'g*, 694 F.2d 233 (11th Cir. 1982)).  In that vein, Roberts avers that the Government failed to show that any text messages he sent originated from the Eastern District of Texas, or that he received any text messages in the District.  So, he claims the Court erred in allowing the jury to consider the offense as part of the "continuing series" of violations needed for the CCE charge.  While creative, the Court rejects Roberts's argument.

To start, the cases that Roberts cites are distinguishable.  In those cases, the courts were specifically dealing with convictions under § 843(b) and whether venue had been established.  *See Andrews*, 817 F.2d at 1279; *see also Barnes*, 681 F.2d at 723–24.  Here, Roberts was not charged with a violation of § 843(b); instead, the Government used an uncharged violation of the statute to meet the requisite number of violations for the CCE charge.

More fundamentally, however, Roberts's focus on venue is far too narrow.  Roberts's complaint relates to his CCE conviction.  Because engaging in a CCE is a continuing offense,[2] venue is dictated by 18 U.S.C. § 3237.  *See United States v. Owens*, 724 F. App'x 289, 294 (5th Cir. 2018) (holding venue for continuing offenses is governed by 18 U.S.C. § 3237).  Under the

---

[2] "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy.  Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each." *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166, 59 S. Ct. 412 (1939) (cleaned up).

statute, venue is proper "in any district in which such offense was begun, continued, or completed." *Id.* (quoting § 3237). Therefore, venue may lie for a CCE charge "in any district where an act that furthered the criminal enterprise took place." *United States v. Taylor*, 489 F. App'x 34, 39 (6th Cir. 2012) (citing *United States v. Kramer*, 955 F.2d 479, 486 (7th Cir. 1992)).

The jury concluded that the conspiracy to possess, with the intent to distribute, marijuana—one of the three predicate violations for the CCE charge—took place in the Eastern District of Texas. Therefore, venue was proper for the CCE conviction. *See Taylor*, 489 F. App'x at 39; *see also United States v. Guthrie*, 789 F.2d 356, 363 (5th Cir. 1986) (Rubin, J., dissenting) (citations omitted) ("[V]enue for the offenses tried in Florida was also proper in Louisiana . . . because that episode was included as a predicate offense in both the conspiracy and the CCE charges. Thus, all charges could have been brought in Louisiana at a single trial, and respect for proper venue did not necessitate successive prosecutions."). As a result, the Court declines to grant a new trial on the grounds that venue was not established for Roberts's § 843(b) violation.[3]

### B. Failure to Include Specific Communication in Instructions

Meanwhile, Roberts's second argument borders on frivolous. He maintains the Court erred because it did not instruct which specific communication of his violated § 843(b) when it charged the jury on the CCE offense (Dkt. #494 at pp. 9–10). Unsurprisingly, Roberts cites no case law to back that assertion, and the Court concludes that this argument misses the mark.

"A conviction under § 843(b) requires proof that a defendant (1) knowingly or intentionally (2) used a communications facility (3) to facilitate the commission of a drug offense." *United States v. Mankins*, 135 F.3d 946, 949 (5th Cir. 1998) (emphasis omitted) (citation omitted). The

---

[3] Although venue was proper for the CCE conviction, the Court also notes that Roberts likely waived the issue. Roberts did not request a jury instruction on venue for the CCE charge, and his motion for acquittal did not mention the issue either. *See United States v. Carbajal*, 290 F.3d 277, 288 n.19 (5th Cir. 2002) (citations omitted) (finding waiver where defendant failed to request jury instruction or specifically raise issue in motion for acquittal).

Court's instructions regarding the offense mirrored the Fifth Circuit Pattern Jury Instructions and included the necessary elements under § 843(b). *Compare* (Dkt. #489 at pp. 19–20), *with* FIFTH CIRCUIT PATTERN INSTRUCTIONS (CRIMINAL CASES) 2.96 (2019). Furthermore, the Government presented numerous examples of Roberts texting his co-conspirators and arranging for the delivery of marijuana. *See United States v. Daniels*, 723 F.3d 562, 575 (5th Cir. 2013) (finding evidence that defendant discussed drug deals on cell phone to be sufficient for conviction under § 843(b)).

"It is well-settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law." *United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992). That is exactly what the Court did here. There was no error in failing to indicate which of Roberts's communications violated § 843(b).

## CONCLUSION

It is therefore **ORDERED** that Defendant Eric Ryan Roberts' Motion for New Trial (Dkt. #494) is hereby **DENIED.**

**IT IS SO ORDERED.**

SIGNED this 13th day of June, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE